UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARQUIZ A. FEAGIN,

Plaintiff,

v.

SACRAMENTO COUNTY JAIL, et al.,

Defendants.

No.  2:26-cv-00693-DJC-SCR

ORDER

Plaintiff is a pretrial detainee at the Sacramento County Jail who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer.  He has requested leave to proceed without paying the full filing fee for this action, under 28 U.S.C. § 1915.  Plaintiff has submitted a declaration showing that he cannot afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to proceed in forma pauperis is granted.[1]

I.    Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In

---

[1] This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one lump sum.  28 U.S.C. §§ 1914(a).  As part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to CDCR requires monthly payments of twenty percent of the prior month's income to be taken from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in full.  See 28 U.S.C. § 1915(b)(2).

1

performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

II.      Factual Allegations of the Complaint

Plaintiff is a pretrial detainee who has been housed at the Sacramento County Main Jail and the Rio Cosumnes Correctional Center ("RCCC").  ECF No. 1.  He names the Sacramento County Sheriff's Department, the Sacramento County Sheriff, and David Delion, his court-appointed investigator, as defendants in this action.  ECF No. 1 at 2.

The complaint alleges a threat to plaintiff's safety dating back to 1999 based on his status as "a Christian descendent of a unbroken genealogy of Adam."  ECF No. 1 at 4.  In claim two, he describes being released on September 11, 2025 and then attacked with a crow bar seven days later while shopping.  ECF No. 1 at 4.  His attackers were Mexican Americans with purple shirts

2

with SCCC written on them.  Id.  Plaintiff reported this attack to Officer Margaret.  Id.  Finally, in claim three, plaintiff raises a First Amendment challenge to the free exercise of his religion because his court appointed investigator is attempting to "muddy up" his case and intimidate him.  Id. at 5.  By way of relief, plaintiff seeks a temporary restraining order against RCCC so that he can practice his religion "without homosexuals being a threat" to his health and safety.  ECF No. 1 at 6.

III.    Motion for a Temporary Restraining Order

In a separately filed motion for a temporary restraining order ("TRO"), plaintiff challenges the order transferring his case to the Sacramento Division because the defendants are all located in Sacramento.  ECF No. 10 at 2.  Plaintiff also takes issue with the undersigned being assigned to this case because his last name of Riordan starts with the same three letters as defendant Rio Cosumnes Correctional Center ("RCCC").  ECF No. 10 at 3.  According to plaintiff, the date of the transfer order (3-3) also has some religious significance.  Id. at 3.

A TRO is an extraordinary remedy that may only be granted if the moving party satisfies one of two legal standards.  A plaintiff seeking a TRO must generally establish all four of the following elements: (1) likely success on the merits of his underlying case; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015).  A plaintiff may also be entitled to a temporary restraining order by showing serious questions going to the merits, irreparable harm, and a balance of equities that tips strongly in the plaintiff's favor.  See All. For the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

The undersigned recommends denying plaintiff's TRO motion because he does not address any of the factors required to obtain injunctive relief.

IV.    Failure to State a Claim

Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that the complaint does not state any valid claim for relief against defendants.  Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation

3

alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Plaintiff fails to provide any facts that adequately link any named defendant with some affirmative act or omission that demonstrates a violation of his federal rights.  Accordingly, he fails to state a claim for relief.  Because of this defect, the court will not order the complaint to be served on defendants.

Plaintiff may try to fix these problems by filing an amended complaint.  In deciding whether to file an amended complaint, plaintiff is provided with the relevant legal standards governing his potential claims for relief which are attached to this order.  See Attachment A.

V.      Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  Rizzo, 423 U.S. at 370-71.  The complaint must also allege in specific terms how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes any prior complaints.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted).  Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

VI.      Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Your complaint will not be served because the facts alleged are not enough to state a claim.  You are being given a chance to fix these problems by filing an amended complaint.  If you file an amended complaint, pay particular attention to the legal standards attached to this

order.  Be sure to provide facts that show exactly what each defendant did to violate your rights.  **Any claims and information not in the amended complaint will not be considered.**

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3.  Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

4.  Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."

5.  Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

6.  The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

IT IS FURTHER RECOMMENDED that plaintiff's motion for a temporary restraining order (ECF No. 10) be denied for failing to demonstrate that he is likely to succeed on the merits of his underlying complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

5

objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 22, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief.  Pay particular attention to these standards if you choose to file an amended complaint.

Plaintiff is informed that a pretrial detainee's right to be free from violence at the hands of other inmates arises from the Fourteenth Amendment.  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067-1068 (9th Cir. 2016).  A prison official's failure to protect a pretrial detainee is actionable if four conditions are met:

> 1. The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> 2. Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> 3. The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> 4. By not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1071.  As to the third element, the defendant's conduct must be objectively unreasonable. Id.

Prisoners retain their First Amendment rights, including the right to exercise religious practices and beliefs.  See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987).  However, the free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security."  McElyea, 833 F.2d at 197; see also Al Saud v. Days, 36 F.4th 949, 957 (9th Cir. 2022) (holding that prisoner rights under the Free Exercise Clause are "necessarily limited by institutional objectives and by the loss of freedom concomitant with incarceration").  To implicate the Free Exercise Clause, a plaintiff must show both that (1) their belief is sincerely held and rooted in religious belief, see Long v. Sugai, 91 F.4th 1221, 1337 (9th Cir. 2024); and (2) that the government action in question "substantially burdens the practice of his or her religion," Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015).  A claim is "rooted in religious belief" if it derives from religion, as

1

opposed to arising from "political, sociological, or philosophical views or a merely personal moral code." See United States v. Seeger, 380 U.S. 163, 853-54 (1965); Callahan v. Woods, 658 F.3d 679, 683 (9th Cir. 1981).  The crux of the sincerity inquiry is whether a plaintiff's proffered belief is "truly held," Seeger, 380 U.S. at 185, as "the First Amendment does not extend to 'so-called religions ... which are obviously shams and absurdities and whose members are patently devoid of religious sincerity." Callahan, 658 F.2d at 683.  A sincerity analysis should be undertaken "with a light touch, or judicial shyness" and is "almost exclusively limited [to] a credibility assessment." Varkonyi v. United Launch All., LLC, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523, at *3 (C.D. Cal. Feb. 21, 2024) (citing Moussazadeh v. Tex. Dep't of Crim. Just, 703 F.3d 781, 792 (5th Cir. 2012).  Accordingly, "the 'truth' of a belief is not open to question," Seeger, 380 U.S. at 185, nor is the belief's centrality to one's faith or the validity of one's interpretations of those creeds dispositive of sincerity, see Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).  Instead, sincerity turns on indicia of genuine devotion to the proffered religion and relevant practice.  See Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (finding that plaintiff was sincere in his belief where there was no evidence in the record challenged his Muslim faith).

"[A] prisoner's Free Exercise Clause claim will fail if the state shows that the challenged action is reasonably related to legitimate penological interests," Al Saud, 36 F.4th at 957, and the legitimacy of such religious regulation is analyzed using the four-factor test gleaned from Turner v. Safley, 482 U.S. 78 (1987), id., Long v. Sugai, 91 F.4th 1331, 1337 (9th Cir. 2024).  "These factors are: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials." Human Rights Def. Cntr., Inc. v. Uttecht, 161 F.4th 1141, 1152 (9th Cir. 2025).